IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLTON SULLINS, an individual; RITA SULLINS, an individual; and DON-SUL, INC., a California corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>EXXON/MOBIL CORPORATION, a New Jersey corporation,<br><br>    Defendant.<br>_____/ | No. C 08-04927 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, AND DENYING DEFENDANT'S MOTION TO STRIKE |

    Plaintiffs Carlton Sullins, Rita Sullins and Don-Sul, Inc. allege that Defendant Exxon Mobil Corporation contaminated land that they own and has unlawfully refused to contribute to the cost of remediation. Defendant moves to dismiss the complaint in its entirety and, presumably in the alternative, to strike certain portions of the complaint. Plaintiffs oppose the motions. The matter was heard on August 27, 2009. Having considered oral argument and all of the papers submitted by the parties, the Court grants in part Defendant's motion to dismiss and denies it in part, and denies Defendant's motion to strike.

BACKGROUND

According to the complaint, the Sullinses are the sole shareholders of Don-Sul. Don-Sul owns an equipment rental business and the real property on which it is located in Livermore, California. Exxon Mobil's predecessor, Mobil Oil Company, previously owned the property and operated a service station on it. Plaintiffs allege that, during the period of Mobil Oil's ownership, harmful chemicals leaked from underground storage tanks and contaminated the soil on the property.

According to Plaintiffs, the California Water Resources Control Board, the County of Alameda and the City of Livermore have determined that Don-Sul and Exxon Mobil are "responsible parties" for the contamination. Plaintiffs allege that, although they have taken steps toward remediating the contamination, Defendant has denied any responsibility for the contamination and has refused to contribute to the cost of remediation.

Plaintiffs assert eight claims against Defendant: 1) violation of California's Porter-Cologne Act; 2) violation of the federal Resource Conservation and Recovery Act (RCRA); 3) negligence; 4) nuisance; 5) intentional misrepresentation; 6) negligent misrepresentation; 7) contribution; and 8) indemnity.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and

2

the grounds on which it rests.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).

## DISCUSSION

### I. Porter-Cologne Act Claim

"California's Porter-Cologne Act establishes a statewide program for water quality control.  Nine regional boards, overseen by the State Board, administer the program in their respective regions."  City of Rancho Cucamonga v. Regional Water Quality Control Bd., 135 Cal. App. 4th 1377, 1381 (2006).  Although the complaint does not specify under which portion of the Porter-Cologne Act Plaintiffs seek to hold Defendant liable, Plaintiffs' opposition to the present motion relies on § 13350(i) of the California Water Code, which provides:

> Any person who incurs any liability established under this section shall be entitled to contribution for that liability from any third party, in an action in the superior court and upon proof that the discharge was caused in whole or in part by an act or omission of the third party, to the extent that the discharge is caused by the act or omission of the third party, in accordance with the principles of comparative fault.

3

Defendant argues that Plaintiffs cannot prevail on their Porter-Cologne Act claim because the complaint does not specify that Plaintiffs have incurred "liability established under this section." In response, Plaintiffs note that the complaint alleges "both the existence of cleanup orders and ExxonMobil's willful violation of those orders." Pls.' Opp. at 6. Although Plaintiffs do not specify under which portion of § 13350 they have incurred liability, it appears most likely that any such liability is based on subdivision (a)(1) or (b)(1). Subdivision (a)(1) provides that any person who "violates any cease and desist order or cleanup and abatement order hereafter issued, reissued, or amended by a regional board or the state board . . . shall be liable civilly, and remedies may be proposed, in accordance with subdivision (d) or (e)." Subdivision (b)(1) provides that any person "who, without regard to intent or negligence, causes or permits any hazardous substance to be discharged in or on any of the waters of the state, except in accordance with waste discharge requirements or other provisions of this division, shall be strictly liable civilly in accordance with subdivision (d) or (e)." Subdivision (d) provides that a court "may impose civil liability either on a daily basis or on a per gallon basis, but not both." Subdivision (e) provides that the "state board or a regional board may impose civil liability administratively . . . either on a daily basis or on a per gallon basis, but not both."

The parties have not cited any California case interpreting liability for contribution under § 13350(i), and the Court has not been able to locate any such case. The only case cited by the

4

parties interpreting the provision is <u>Team Enterprises, Inc. v. Western Investment Real Estate Trust</u>, 2008 WL 5246013 (E.D. Cal. 2008).[1]  The plaintiff in <u>Team Enterprises</u> operated a dry cleaning business on property that had become contaminated with perchloroethylene.  The plaintiff alleged that it had entered into an agreement with the City of Modesto "to investigate and clean up" the contamination and "to pay the oversight of remedial work of the Regional Water Quality Control Board."  <u>Id.</u> at *2.  It also alleged that it had "incurred costs" due to the contamination on the property.  <u>Id.</u>  The court noted that the plaintiff had failed to allege that it had incurred liability under § 13350(a) by violating a cleanup order or under § 13350(b) by causing or permitting a hazardous substance to be discharged into the waters of the state. Because § 13350(i) "expressly limits its right to contribution to 'liability under this section,'" and because the complaint failed to allege that the plaintiff had incurred liability under § 13350, the court dismissed the claim.

This Court finds the reasoning of <u>Team Enterprises</u> persuasive. Although Plaintiffs allege that the California Water Resources Control Board has identified Don-Sul and Exxon Mobil as "responsible parties," and although they allege the existence of some sort of cleanup order, they do not allege that the Board or a court has imposed liability on them pursuant to § 13350(d) or (e), which contemplate the imposition of a daily or per-gallon fine.

---

[1] Citation of an unpublished district court opinion is not improper, as Plaintiffs assert, unless the opinion has been designated as "not for citation."  <u>See</u> Civ. Local R. 3-4(e).  <u>Team Enterprises</u> is not designated as "not for citation."

1  Instead, Plaintiffs simply allege that <u>Defendant</u> has violated the
2  clean up order.  Although any such violation may permit the Board
3  or a court, in an appropriate action, to impose liability on
4  Defendant pursuant to § 13350(d) or (e), it does not give rise to a
5  contribution claim under § 13350(i).[2]  Accordingly, the Porter-
6  Cologne Act claim is dismissed.  Plaintiffs are given leave to
7  amend to allege, if they can truthfully do so, facts sufficient to
8  permit the conclusion that they have incurred liability under
9  § 13350 and thus may seek contribution under § 13350(i).
10 Alternatively, an amended complaint may identify another provision
11 of the Act that entitles Plaintiffs to recover based on the
12 allegations contained in the complaint.

13     Defendant also argues that Plaintiffs' Porter-Cologne Act
14 claim is barred by the Act's three-year statute of limitations.
15 <u>See</u> Cal. Civ. Proc. Code § 338(i).  Defendant asserts that, because
16 Mobile Oil sold the property in 1969, any contamination occurred
17 more than three years ago, and thus any action arising from the
18 contamination is time-barred.  Defendant's argument depends on
19 characterizing the injury to Plaintiffs as the original release of
20 the contaminants onto the property.  If Plaintiffs are able to
21 state a claim under § 13350(i), their alleged injury will be, not
22 contamination of the property, but liability imposed on and paid by

---

[2] This Court may not impose liability under § 13350 for Defendant's alleged violation of the cleanup order because, as Plaintiffs apparently concede, the Porter-Cologne Act does not provide a private right of action to enforce a cleanup order.  <u>See</u> Cal. Water Code § 13361(a) ("Every civil action brought under the provisions of this division at the request of a regional board or the state board shall be brought by the Attorney General in the name of the people of the State of California . . . .").

6

them under § 13350(a) or (b). It is not clear from the complaint that any such injury occurred more than three years before this lawsuit was filed. Accordingly, it does not appear that the statute of limitations would preclude Plaintiffs from attempting to amend the complaint to state a Porter-Cologne Act claim.

II. RCRA Claim

    A.   Sufficiency of the Allegations in the Complaint

The citizen suit provision of the RCRA permits an individual to commence an action in district court against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter." 42 U.S.C. § 6972(a)(1)(A).[3] Defendant argues that Plaintiffs have not sufficiently alleged that Defendant has violated a permit, etc., that has "become effective pursuant to" the RCRA. In response, Plaintiffs note that ¶ 26 of the complaint alleges that Defendant's alleged discharges "are in violation of, among other statutes, the [RCRA], which is codified at 42 U.S.C.A. 6901, et seq."

It is true that the complaint alleges in general terms that

---

[3] Although it is not clear from the complaint, Plaintiffs' submissions indicate that they assert their claim under § 6972(a)(1)(A) and not § 6972(a)(1)(B), which provides a private cause of action against any person, "including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." Although the allegations in the complaint are more consonant with an action brought under § 6972(a)(1)(B), it does not appear that Plaintiffs complied with the ninety-day pre-suit notice requirement that applies to such actions.

7

Defendant has violated the RCRA. However, the RCRA consists of many sections, and the complaint does not point to any particular provision that Defendant has allegedly violated. The broad allegation that Defendant "violated the RCRA" is simply not sufficient to put Defendant on notice of the claim against it in a way that would enable it to articulate a defense. Nor have Plaintiffs established that Defendant's alleged violation of the state agencies' cleanup orders constitutes a violation of a "permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to" the RCRA. Accordingly, the RCRA claim is dismissed with leave to amend to specify what provision of the RCRA Defendant has allegedly violated and to allege facts to support the conclusion that such provision was violated. As explained below, however, Plaintiffs must comply with the RCRA's notice requirement before amending the complaint to re-assert any RCRA claim.

Defendant also contends that Plaintiffs cannot state a RCRA claim because, according to Board of County Commissioners v. Brown Group Retail, Inc., 598 F. Supp. 2d 1185, 1198-1202 (D. Colo. 2009), § 6972(a)(1)(A) does not permit suits based on "wholly past violations." The Court need not determine whether it will follow Brown Group because Plaintiffs have not explained how Defendant allegedly violated the RCRA, and thus it is not clear whether any such violation is "wholly past" or continuing. Defendant may raise this issue in a future motion, if appropriate.

8

B.  Sufficiency of Notice

Defendant further argues that Plaintiffs' RCRA claim is subject to dismissal because it fails to satisfy the Act's notice requirement. The Act's citizen suit provision states that no action brought under § 6972(a)(1)(A) may be commenced "prior to sixty days after the plaintiff has given notice of the violation to-- (i) the Administrator [of the Environmental Protection Agency (EPA)]; (ii) the State in which the alleged violation occurs; and (iii) to [sic] any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order . . . ." 42 U.S.C. § 6972(b)(1)(A). The Supreme Court has interpreted this pre-suit notice requirement strictly:

> The language of this provision could not be clearer. A citizen may not commence an action under RCRA until 60 days after the citizen has notified the EPA, the State in which the alleged violation occurred, and the alleged violator. Actions commenced prior to 60 days after notice are "prohibited." Because this language is expressly incorporated by reference into § 6972(a), it acts as a specific limitation on a citizen's right to bring suit. Under a literal reading of the statute, compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit.

Hallstrom v. Tillamook County, 493 U.S. 20, 26 (1989). Moreover, if a plaintiff files suit under the RCRA and subsequently serves the required notice, the court is not permitted to adopt a "flexible or pragmatic" approach to the notice requirement, such as by staying the action for sixty days. Id. at 26-27. Rather, the court must dismiss the action. Id. at 32-33.

The EPA has promulgated a regulation detailing the contents of the notice required by the RCRA's citizen suit provision:

> Notice regarding an alleged violation of a permit,

9

>  standard, regulation, condition, requirement, or order
>  which has become effective under this Act shall include
>  sufficient information to permit the recipient to
>  identify the specific permit, standard, regulation,
>  condition, requirement, or order which has allegedly been
>  violated, the activity alleged to constitute a violation,
>  the person or persons responsible for the alleged
>  violation, the date or dates of the violation, and the
>  full name, address, and telephone number of the person
>  giving notice.

40 C.F.R. § 254.3(a).  Although Defendant implicitly concedes that Plaintiffs provided notice to the appropriate parties more than sixty days before amending their complaint to add the RCRA claim, it argues that the notice is invalid because it does not satisfy the regulation's requirement that notice identify the nature and date of any RCRA violation.

The notice that Plaintiffs served before adding their RCRA claim is no more specific with respect to the RCRA violation than the amended complaint.[4]  Like the complaint, the notice specifies the facts that form the basis of this lawsuit, but it fails to identify any "permit, standard, regulation, condition, requirement, or order" that has become effective under the RCRA and that Defendant has allegedly violated.  It merely cites § 6972(a)(1)(A), which contains no substantive requirements, and quotes the Act's definition of "solid waste."  Plaintiffs' failure to provide notice complying with 40 C.F.R. § 254.3(a) prior to asserting their RCRA claim provides another basis for dismissal.  Before seeking to re-assert a claim under § 42 U.S.C. § 6972(a)(1)(A), Plaintiffs must comply with the notice requirement contained in 42 U.S.C.

---

[4]The Court grants Defendant's unopposed motion to take judicial notice of Plaintiffs' notice of intent to sue.

10

§ 6972(b)(1)(A).

III. Negligence Claim

At its heart, negligence is the creation of an unreasonable risk of harm which results in an injury that is not the specifically intended consequence of the tortfeasor's actions. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 31 (5th Ed. 1984). As the complaint makes clear, Plaintiffs' negligence claim is not based on Defendant's presumably inadvertent contamination of the property. Rather, it is based on Defendant's decision not to comply with the cleanup orders that allegedly required it to remediate the contamination. This was an intentional act that, in itself, was allegedly unlawful by its very nature. The act did not merely create a risk of harm that resulted in an unintended injury; the pecuniary injury to Plaintiffs was the direct consequence of Defendant's intentional act and was certain to occur. Just as an intentional failure to pay an amount due under a contract or pursuant to a judgment is not "negligence," neither is Defendant's alleged decision not to contribute to cleanup costs "negligence." No formulaic recitation of the elements of a negligence claim can escape this conclusion.

The negligence claim is therefore dismissed. The dismissal of this claim is without prejudice to refiling if Plaintiffs can truthfully allege that Defendant did undertake some cleanup action but did so negligently.

IV.  Nuisance Claim

In its opening brief, Defendant argued that, to the extent Plaintiffs' nuisance claim was for a permanent nuisance, it is

11

barred by the statute of limitations. In their opposition, Plaintiffs clarified that their claim is not for a permanent nuisance, but for a continuing nuisance, which would not be time-barred. See Mangini v. Aerojet-General Corp., 12 Cal. 4th 1087, 1093 (1996). Defendant did not refute this point in its reply, and the Court will deem Defendant to have abandoned its statute of limitations argument in connection with the nuisance claim.

    Defendant also argues that Plaintiffs have not stated a nuisance claim because they have not alleged that Defendant created a condition that was "injurious to health" or obstructed "the free use of property, so as to interfere with the comfortable enjoyment of life or property," as required by § 3479 of the California Civil Code. Defendant asserts that its alleged failure to comply with the cleanup orders does not threaten Plaintiffs' health or interfere with their use of the property. Plaintiffs counter that their nuisance claim is premised on their allegation that Defendant was responsible for the contamination in the first place, and that it continues to fail to abate it. Although the complaint is not clear on this point, the Court will accept Plaintiffs' representation. The Court cannot conclude based on nothing more than the complaint that Plaintiffs will be unable to show that the contamination is injurious to health or that it interferes with their free use of the property. The allegations in the complaint are sufficient to put Defendant on notice of the nuisance claim against it, and the claim will not be dismissed.

12

V.  Fraud and Negligent Misrepresentation Claims

Under California law, "[t]he elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." Conroy v. Regents of Univ. of Cal., 45 Cal. 4th 1244, 1255 (2009). "The tort of negligent misrepresentation, a species of the tort of deceit, does not require intent to defraud but only the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." Id. (citation omitted). Under the Federal Rules of Civil Procedure, a fraud claim must be plead with particularity. Fed. R. Civ. P. 9(b).

According to the complaint, Plaintiffs' fraud and negligent misrepresentation claims are based on alleged misrepresentations, made by Defendant's agents during settlement negotiations concerning Defendant's compliance with the cleanup orders, that the agents would "promptly take the necessary steps to obtain authorization to make a financial contribution to the clean up of the Property," and that Defendant intended "to take positive action toward contributing to the cost of the remediation." Compl. ¶¶ 43, 46. Although the mere failure to fulfill a promise to take a future action is not fraud, a promise that is made without any intention of taking the promised action may constitute a misrepresentation that can form the basis for a fraud claim, assuming the other elements are satisfied. See Lazar v. Superior

13

Court, 12 Cal. 4th 631, 638 (1996).[5]

It is not clear that the complaint identifies a specific promise to take a concrete action, let alone that any such promise was violated; the misrepresentations alleged in the complaint amount to promises to take undefined further steps toward the ultimate goal of contribution by Defendant toward cleanup costs. In addition, Plaintiffs have not alleged, in other than conclusory terms, that they suffered an injury by acting in justifiable reliance on any misrepresentation that was made.  The only action they allege to have taken in reliance on the alleged promises was instructing their attorney "to wait for ExxonMobil to present its proposal to contribute to the cost of the clean up and to take no action other than to respond to inquiry from ExxonMobil because Sullins could not afford to incur further attorneys' fees to more doggedly pursue ExxonMobil."  Compl. ¶ 45.  The complaint does not state that, absent Defendant's representations, Plaintiffs would have acted differently, nor specify whether and how Plaintiffs' forbearance from pursuing Defendant for a period of time caused them to suffer an injury.  Although the complaint states that Plaintiffs suffered damages "including but not limited to costs to investigate, remediate, lost business profits, [and] costs to consultants and attorneys," the complaint does not specify a factual link between any of these injuries and an action taken by Plaintiffs in reliance on Defendant's alleged misrepresentation that it would contribute to the cost of cleaning up the property.

---

[5]The parties have not briefed the issue of whether a negligent misrepresentation claim can be premised on a broken promise.

14

Because the complaint does not state a fraud claim, the claim is dismissed. Plaintiffs are given leave to amend to specify 1) a specific promise that was not fulfilled and that Defendant had no intention of fulfilling when it was made; 2) specific actions or forbearance undertaken because Plaintiffs justifiably relied on the promise; and 3) specific injury that resulted from those actions or forbearance.

VI.  Contribution and Indemnity Claims

Plaintiffs' seventh and eighth claims are for contribution and indemnity, respectively. These claims specify that they are founded on both the Porter-Cologne Act and the common law. Any claim based on the Porter-Cologne Act is redundant of the first claim, which itself is for contribution, and is thus stricken.

Plaintiffs do not clearly explain the basis of any common law claim for contribution or indemnity. "[T]he rule of equitable indemnity . . . permit[s] a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." Major Clients Agency v. Diemer, 67 Cal. App. 4th 1116, 1127 (1998). Equitable indemnity "either imposes the entire loss on one of two or more tortfeasors or apportions it on the basis of comparative fault." Contribution is similar to equitable indemnity in that it permits one joint tortfeasor to recover from another. However, contribution "is a creature of statute and distributes the loss equally among all tortfeasors." Coca-Cola Bottling Co. v. Lucky Stores, Inc., 11 Cal. App. 4th 1372, 1378 (1992). Although the complaint pleads claims for both contribution and indemnity, Plaintiffs do not appear to contend that Defendant is liable for

15

only one-half of the cleanup costs.  Thus, in substance, both of the claims appear to be for equitable indemnity.  <u>Cf.</u> <u>id.</u> ("Even in the cause of action which sought recovery for 'equitable contribution,' Coca-Cola was really seeking the same thing [as in its claim for "partial equitable indemnity"] ('an equitable contribution to any judgment or settlement herein in direct proportion to the amount of negligence of each cross-defendant.'")).  If not, the two claims are mutually exclusive because "[w]here a right of indemnity exists there can be no right of contribution."  <u>Id.</u>

    This case does not present the typical scenario in which the right to equitable indemnity -- whether partial or total -- is asserted, and it is not clear that such a claim may be asserted here.  For example, it is not clear that Plaintiffs and Defendant have incurred, by virtue of the cleanup orders issued by the state agencies, joint and several liability to a third party.  Yet joint and several liability to a third party, in the form of a judgment or settlement, is a prerequisite to any equitable indemnity claim.  <u>Major Clients Agency</u>, 67 Cal. App. 4th at 1126.  Nor is it clear that a claim for equitable indemnity exists when, as here, the liability that serves as the basis for such a claim is imposed, not under the common law, but pursuant to a regulatory scheme that has its own rules regarding contribution.  Finally, it is not clear from the complaint that Plaintiffs have actually satisfied more than their fair share of any obligation owed jointly with Defendant under the cleanup orders.  Yet a claim for equitable indemnity does not exist until the plaintiff has suffered actual loss through

16

payment. Id. at 1127.

These issues, however, have not been adequately briefed. The relevant portion of Defendant's brief argues simply that "courts of equity should not act when the moving party has an adequate remedy of law." Mot. at 11. Defendant asserts that Plaintiffs have failed to allege that they lack an adequate remedy at law and, in fact, have adequate legal remedies in the form of their other causes of action. Defendant has not demonstrated, however, that the familiar maxim concerning the availability of equitable relief has any application to the present case. Defendant has not cited any case applying the maxim to an indemnity or contribution claim. The maxim is generally invoked when a plaintiff seeks an equitable remedy other than the payment of money, such as an injunction. Here, Plaintiffs simply seek an order requiring Defendant to pay its share of the cleanup costs. This would be tantamount to a judgment for damages.

Defendant also argues that any claim for equitable indemnity or contribution is barred by the three-year statute of limitations that applies to an action "for trespass upon or injury to real property." See Cal. Civ. Proc. Code § 338(b). In support of this argument, Defendant cites City of San Diego v. United States Gypsum Co., 30 Cal. App. 4th 575 (1994). However, in U.S. Gypsum, the court found that the plaintiff had not stated a claim for equitable indemnity because, among other reasons, although it had incurred costs in abating asbestos, those costs were incurred more than three years prior to the initiation of the action. Id. at 584. Defendant does not contend that any costs incurred by Plaintiffs

17

were incurred more than three years before the complaint in this case was filed. Rather, Defendant simply states that any damage it caused to the property was done decades ago. As with the Porter-Cologne Act claim, this overlooks the fact that the damage which forms the basis of the indemnity claim is not the original contamination, but rather the imposition of liability on Plaintiffs to abate that contamination. The indemnity claim did not accrue until Plaintiffs paid those costs.

Because Defendant has not shown that Plaintiffs will be unable to prevail on a claim for equitable indemnity or contribution, these claims will not be dismissed.

VII. Standing

Defendant argues that the Sullinses lack standing to sue because Don-Sul is the owner of the contaminated property and must pay any cleanup costs. However, the Sullinses are the sole shareholders of Don-Sul and the company is the source of their livelihood. They have a direct interest in this litigation and stand to be injured personally if it is not resolved in their favor. The Court will not dismiss the Sullinses' claims.

VIII. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that the court "may" strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Defendant argues that much of the prayer for relief in the complaint should be stricken because the relief requested is unavailable. Because many of the claims to which the motion to strike is directed are being dismissed, Defendant's request is largely moot, at least for the

18

time being.  Moreover, the motion asks the Court to determine issues of damages that would be more appropriately addressed in a later stage of the litigation when the facts underlying Plaintiffs' claims have been more fully developed.  The motion is therefore denied.  Defendant may later move for summary adjudication on the availability of damages, or may raise the issue at trial.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Docket No. 24) is GRANTED IN PART and DENIED IN PART.  Plaintiffs' claims under the Porter-Cologne Act and the RCRA, as well as their claims for negligence, intentional misrepresentation and negligent misrepresentation, are dismissed.  Plaintiffs are given leave to amend the complaint to cure the deficiencies in their claims.  If Plaintiffs cannot include their RCRA claims in an amended complaint at this time because of a failure to give adequate notice, they must omit those claims and move for leave to amend to add them in seventy days.  Any second amended complaint must be filed on or before October 9, 2009.  If no second amended complaint is filed, Defendant must file an answer to the nuisance, contribution and indemnity claims on or before October 30, 2009.

IT IS SO ORDERED.

Dated: 9/2/09

CLAUDIA WILKEN
United States District Judge

19